Lockridge v. Baldwin.

---

WILLIAM T. LOCKRIDGE v. CHARLES P. BALDWIN AND OTHERS.

The District Court from which an execution issues has jurisdiction of a motion against a bidder to recover twenty per cent. on the value of property bid off by him at a sale under such execution, where he fails to comply with the terms of the sale, (Hart. Dig. Art. 1338,) although the amount to be recovered may be less than one hundred dollars.

The writ of *venditioni exponas* has its origin in the exigencies of the Sheriff's duties and liabilities. It has been recognized, as in practice, by the legislative authority; and although the Act containing such recognition has been repealed, there is yet no Act contravening its use. We can see no objection to it upon principle. The most usual practice, perhaps, is to issue another execution, and indorse on it the levies returned by the Sheriff on the former writ; and we do not say that this is not the correct and perhaps the best practice.

On a motion against a bidder at Sheriff sale, for failing to comply with the terms of sale, the judgment and previous executions (without deciding that this evidence was necessary) are admissible in evidence to show the foundation of the execution under which the sale was made.

The plaintiff read in evidence the return of the Sheriff on the writ of *venditioni exponas,* to show that the defendant had bid off the land, and had failed to comply with his bid; to which defendant excepted, as being secondary evidence. It is a sufficient answer to this objection, without discussing its merits,

that the Deputy Sheriff, who made the return, was immediately placed on the stand, and testified to all the facts pertaining to the sale, as stated in the return.

It is the duty of a bidder at a Sheriff sale, to whom property has been knocked down, to take the first step to complete the purchase, by complying, or manifesting a readiness to comply, with the terms of the sale, before he can expect the deed to be given or even tendered to him.

In order to sustain a motion against a bidder at Sheriff sale, who has failed to comply with the terms of sale, to recover twenty per cent. on the value of the property bid off by him, it is not necessary that there should have been any memorandum in writing, of the sale.

Appeal from Gonzales. Tried below before the Hon. Fielding Jones.

The bidder complied with the terms of the second sale before the return day of the execution, and the sale was completed. The plaintiff claimed the twenty per cent. damages on the amount of said second bid also, on the ground that defendant did not immediately comply with the terms of the sale; but the Court (the case not being considered a jury case by the Judge, and the parties agreeing to waive a jury) refused to allow the damages on the second sale. The second sale was held on the 3d of February, 1857; the Sheriff indorsed the facts on the execution, and readvertised the property for sale in March; on the 7th of February this motion was filed; and on the 6th of April defendant paid the purchase money, as above stated, und received a deed; there being no sale in March, as advertised. The plaintiff excepted, but did not assign errors in the Court below. The other facts appear from the Opinion.

*Stewart & Mills*, for appellant. I. The officer did not tender the deed until two or three days after the sale day; and the failure of Lockridge to comply was caused by the officer's failure to tender the deed at the time. Art. 1339 of the Digest presupposes that all of the officer's duties, in making the sale, are complied with on the day of the sale, for it authorizes the Sheriff to sell again on the same day, if there be time, in case of failure of the bidder to comply.

Under a statute similar to ours, in Indiana, the Courts have held that an offer to convey the land to the bidder must be averred and proved before he can be liable. (Williams v. Lines, 7 Blackf. 46.)

II. The bid, at the second sale, was paid by the bidder before the return day of the *venditioni exponas.*

III. This sale was under a *venditioni exponas*, and it is respectfully submitted whether the bidder can be held liable unless the sale be under a regular execution.    That species of writ is nowhere expressly sanctioned in our statute law, the Act of 17th March, 1841, being repealed; nor was there any order of Court for its issuance.

IV. But to hold the bidder liable on his bid, there must be some memorandum in writing of the sale, signed by the party to be charged therewith.    (Baker v. Jamieson, 2 J. J. Marsh. 547; Guinn on Sheriffs, 371.)

*Parker & Nichols,* for appellees, argued in answer to the assignments of error, and claimed that the judgment be reformed, so as to allow appellees the twenty per cent. damages on the amount of the bid at the second sale.

ROBERTS, J.    This is a motion in the District Court, against a bidder at a Sheriff's sales of land under a writ of *venditioni exponas*, to recover seventy-five $\frac{40}{100}$ dollars, being twenty per cent. on the amount of his two bids, on account of his having failed to comply with the terms of the sales according to his bids.

The Court rendered a judgment for forty-seven dollars, that being twenty per cent. on the amount of the first bid.    It will be unnecessary to consider the questions arising on the second.

Lockridge, the defendant, objected to this motion, 1st. That the District Court had no jurisdiction, the amount sought to be recovered being under one hundred dollars; and 2d. That the sale having been made under a writ of *venditioni exponas* was not a sale "by virtue of an execution," and that therefore the statute giving this remedy does not apply to a bid at such sale.

1st. The statute under which this motion is made, reads as follows: "That if any person shall bid off property at any sale made by virtue of an execution, and shall fail to comply with the terms of the same, he shall be liable to pay to the plaintiff or plaintiffs in execution, twenty per cent. on the value of the property so bid off, besides costs, to be recovered before the Court whence the execution issued, by motion, three days' previous notice being given to him or her that said motion will be made." (Hart. Dig. Art. 1338.)

By becoming the highest bidder at the sale, the defendant made himself a participant in and about the suit of Baldwin, Starr & Co. v. Russell et al., the judgment in which was being executed by the process of the Court. If he had complied with the terms of the sale, he would have been giving aid to its execution; but as he failed to comply, he was thwarting the course of the law in its administration of justice between the parties. His act is in the nature of a contempt to the Court by the obstruction of its process. If the Court had not the right to compel respect for its process of execution, by the enforcement of some such penalty, it might often be powerless, and would fail to execute its own judgments, by an endless succession of bids, not complied with by the bidders. Courts of general jurisdiction have an inherent power of self-protection by punishing acts done in contempt of their process. (Blackstone's Com. 4th vol., marg. page 285.) This Act was passed to regulate and give direction to this power; and it gave to the plaintiff the right to make the motion to enforce the penalty, because his interest being directly affected by such Act, would be a strong incentive to induce him to move against any one who should thus endeavor to trifle with the process of the Court.

2d. To maintain this motion the sale must have been by virtue of an execution. Execution is defined to be the act of carrying into effect the final judgment of a Court. The writ which authorizes the officer so to carry into effect such judgment is also called an execution. (1 Bouv. Law Dict. 495.) *Venditioni exponas* is "a writ of execution, directed to the Sheriff, commanding him to sell goods or chattels, and in some States, lands, which he has taken in execution by virtue of a *fieri facias,* and which remain unsold." (2 Bouv. L. D. 621.)

In Tidd's Practice it is said that "if the Sheriff return (on a *fieri facias*) that he has taken goods, which remain in his hands for the want of buyers, the plaintiff may sue out a writ of *venditioni exponas,* reciting the former writ and return, and commanding the Sheriff to expose the goods to sale, and have the moneys arising therefrom in Court at the return of it; or if goods are not taken to the value of the whole, the plaintiff may have a *venditioni exponas* for part, and a *fieri facias* for the residue, in the same writ." (2 Tidd's Practice, marg. p. 1020.)

It will be seen that the writ issued in this case answers exactly the description of a *venditioni exponas* as defined by these authors. The question is whether such a writ is contemplated by the use

of the word execution found in this statute. At the first organization of the District Courts by the Republic of Texas, it was enacted that "it shall be the duty of the Judge of any Court to cause the judgment, sentence or decree of the Court to be carried into execution agreeably to law." (Hart. Dig. Art. 1268.) In 1839 a general execution law was passed, giving the form of the writ, corresponding to the Common Law writ of *fieri facias,* except that it included lands as well as goods and chattels. (Hart. Dig. Art. 1271–1287.) This Act was repealed by the Act of 1840, and another general Act passed in which the form was omitted, and no directions given as to the form of the writ. (Hart. Dig. Art. 1288–1310.) This was after the adoption of the Common Law, (Hart. Dig. Art. 127,) which was by Act of January 20th, 1840. One year after the adoption of the Common Law an Act was passed exempting slaves from "forced sales, by virtue of any writ of *venditioni exponas, fieri facias* or execution of any kind," &c. (Hart. Dig. Art. 1322.) This Act was repealed during the same year, and it is only cited for the purpose of showing that the legislative authority had recognized *venditioni exponas* as one of the writs of execution. It is quite reasonable that, upon the adoption of the Common Law, the Courts and their officers should at once adopt the writs known and used in Common Law countries, so far as they were in accordance with our own statutes. And it may well be presumed from this Act, that this writ had thus come into practice. There was not then, nor is there yet, any statute contravening its use.

After this statutory recognition of this writ, an Act was passed styled "An Act to reduce into one and amend the several Acts concerning executions," which is still in force. This does not give any form or name of an execution, and it is fair to presume that such writs were intended to be used as were then in use, and recognized by former laws.

A writ of execution is the imbodied power of the Court, in the shape of a command to a ministerial officer, respecting the rights of the parties to the judgment; and imposing upon the officer certain duties and liabilities prescribed by law. The writ must assume a shape with reference to those rights, duties, and liabilities, thus prescribed. For instance, we cannot adopt the form of *fieri facias* strictly, because it is the right of the plaintiff to have the defendant's land sold if necessary, and it is the duty of the Sheriff to levy on it in the enforcement of a judgment, upon the contingency and in the manner prescribed by law. (Hart.

Dig. Art. 1327.) So too the writ of *levari facias* is not applicable, for the same reason. The writ of *capias ad satisfaciendum* cannot be taken out, because our Constitution has abolished imprisonment for debt, and the plaintiff has no right to take the body in satisfaction. (Bill of Rights, Hart. Dig. page 52, Sec. 15.) The law then giving the plaintiff the right to have defendant's lands as well as his goods and chattels sold absolutely, makes the writ of *fieri facias* most applicable, and requires but a slight addition for its adoption. Nor does that change (extending it to the sale of lands) materially alter the principles of law attaching to it as a process of execution.

The writ of *venditioni exponas* arises out of, and is partly dependent upon, and auxiliary to, the writ of *fieri facias*. It but imbodies the rights of the parties and the duties of the officer, after an execution has been returned with a levy on property indorsed on it. It had its origin, as is very probable, in the exigencies of the Sheriff's duties and liabilities. For if the Sheriff levied on property by virtue of a *fieri facias*, and the return day arrived before he had sold the same, he had the power, and it was his duty, to sell it after that day. (Tidd's Practice, marg. p. 1021; Hamilton v. Ward, 4 Tex. R. 356.) If the Sheriff did not return the writ, at return day, he was liable to a rule or to a suit. (Tidd's Practice, marg. pp. 1017, 1018, 1019; Hart. Dig. Art. 1287.) If it were doubtful whether he had levied on property sufficient to satisfy the judgment, it was hazardous for him to retain the execution. That difficulty was obviated by his returning the *fieri facias* with his levy indorsed on it, with an excuse for not selling, and then the plaintiff could take out an order of sale to sell the property thus levied on for his benefit, and this was the writ of *venditioni exponas;* which could be issued singly as in this case, or in conjunction with another writ of *fieri facias.* (Tidd's Practice, marg. p. 1020.)

Upon principle we can see no objection to this as a writ of execution, and deem it to be lawful.

The most usual practice, perhaps, is to issue another execution, and indorse on it the levies returned by the Sheriff on the former writ, and we do not say that this is not the correct, and perhaps the best practice.

An exception is taken by the appellant, that the Court erred in admitting the judgment and previous executions to be read in evidence. Without deciding that this evidence was necessary, it was but introductory in its character, to show the foundation,

upon which the writ of *venditioni exponas* was predicated, and could not possibly prejudice the appellant's cause.

The plaintiff read in evidence the return of the Sheriff on the writ of *venditioni exponas*, to show that the defendant had bid off the land, and had failed to comply with his bid; to which defendant excepted, as being secondary evidence. It is a sufficient answer to this objection, without discussing its merits, that the deputy Sheriff, who made the return, was immediately placed on the stand, and testified to all the facts pertaining to the sale, as stated in the return. And if it be admitted that the return was secondary evidence, the defect was supplied and supplanted at once by what, in the objection, was admitted to be the best evidence.

It is contended that the defendant was released from his bid by the fact that the Sheriff did not tender him a deed on the day of sale. The statement of facts shows that two days after the sale the Sheriff tendered a deed and demanded a compliance with the sale. By the statute it is provided " that when a sale has been made and the terms thereof complied with, the Sheriff shall execute and deliver to the purchaser a conveyance," &c., and also " that when the terms of the sale shall not be complied with by the bidder, the Sheriff shall proceed to sell the property again, on the same day, if there be sufficient time ; but if not, he shall re-advertise the same for the next succeeding regular sale day." (Hart. Dig. Art. 1345 and 1339.) It does not appear why the Sheriff did not again sell the property on the same day ; and in the absence of all testimony on that subject, it may be presumed that the Sheriff did his duty under the circumstances.

It may be, under a proper construction of these two clauses, that either party would have a right to insist upon the sale being concluded, at least by some written memorandum, and by payment of the purchase money on the day of sale, or at least as soon as practicable. But it is for the purchaser to take the first step by complying, or manifesting a readiness to comply, with the terms of the sale, before he can expect the deed to be given or even tendered to him. And if he does not do so on the day of sale, no good reason is seen why the purchaser would be released from his bid, by his own failure for two days to take the initiative towards closing the contract, and by his entire refusal then to comply when a deed was tendered to him by the Sheriff.

The objection that there was no memorandum in writing made, to bind the contract of sale, is equally untenable. This is not

a proceeding to enforce a contract for the sale of land, but to enforce a penalty for not completing the contract of sale agreed upon by the making of the bid. (Hart. Dig. Art. 1451; James v. Fulcrod, 5 Tex. R. 512.)

We are satisfied that this is a proper case for the exercise of this remedy, so necessary to protect the rights of litigants, and so necessary to sustain the majesty of the law. Judgment is affirmed.

Judgment affirmed.