## C. J. BORDEN v. F. TILLMAN AND T. J. McRAE.

1. *Venditioni exponas* is a writ of execution, and is authority to sell the lands described therein as full as was the original execution.
2. It seems that an innocent purchaser at an execution sale takes title as against a prior unrecorded deed from the defendant in execution.

APPEAL from Walker. Tried below before the Hon. J. R. Burnett.

C. J. Borden recovered judgment in the District Court of Brazoria county on the eleventh of November, 1869, against appellee, F. Tillman, for $1056.76. Execution issued to Brazoria county, which was returned *nulla bona*. Afterwards, on the seventh of December, 1869, *alias* execution issued to Walker county, which was, on the thirteenth of December, 1869, levied on an undivided half of the Bennett league of land, in Walker county, as the property of Tillman. The land was advertised for sale by the sheriff of Walker county for the first Tuesday in January, 1874, but for causes shown by the witness, J. H. Banton, the sale was postponed from time to time, and was again advertised to take place the first Tuesday in May. The execution being returnable the —— day of April, 1870, it was returned by the sheriff on the thirty-first day of March, 1870, for want of time to sell. A further endorsement of date thirty-first of March was, "Sale held up until the first Tuesday in May, 1870, by direction of plaintiff's attorney, and this writ returned for want of time; and *venditioni exponas* asked." The *venditioni exponas* was issued the twenty-sixth of May, 1870, and under it the land was sold the first Tuesday in August, 1870. C. J. Borden, the plaintiff in execution, became the purchaser. This suit was instituted by her on the seventeenth of May, A. D. 1871, against Tillman and McRae, alleging that McRae was

setting up a claim to the land by virtue of some pretended conveyance from Tillman, which she alleged was void, both on account of fraud and on account of not being registered. On the second of August, 1872, the defendants answered separately, but setting up substantially the same defenses ; the defendant McRae filing with his answer his deed from Tillman, purporting to have been executed in the State of Georgia the fifteenth of October, 1869, and recorded in Walker county the nineteenth of September, 1871. The cause came on for trial in the District Court of Walker county the twenty-first of November, 1872. The plaintiff introduced certified copies of her judgment, the executions to Brazoria and Walker counties and sheriffs' returns thereon, and then offered in evidence the *venditioni exponas*, to which the defendants objected, on the ground that it was void, which objection the court sustained. The plaintiff then offered to prove the reasons for holding up the sale as shown in the sheriff's return. To this the defendants objected, and the objections being sustained, the plaintiff took her bill of exceptions. The court charged the jury to find for the defendants, which was done, and judgment entered accordingly. Plaintiff moved for a new trial, which was overruled, and she appealed.

*Abercrombie & Banton*, for appellant.—The main and, in fact, only question for the consideration of the court is as to the ruling of the court below in sustaining the defendants' objections to the admissibility in evidence of the *venditioni exponas*. The reason for this ruling is given by the judge in his charge to the jury:

"This writ was ruled out of evidence on objection of defendants, because in my opinion the return of the sheriff shows an abandonment of the previous levy." The return of the sheriff shows a levy the thirteenth day of

December, 1869, and concludes as follows: "Sale held up till the first Tuesday in May, A. D. 1870, by direction of plaintiff's attorney, and the writ returned for want of time, and *venditioni* asked for, this March 31, 1870." Does this return show an abandonment of the levy? If it does, we believe we can safely say that one-half the sheriffs' titles in this State are nullities. But upon what ground can this return be regarded as an abandonment? We are told upon the ground as given by the court, and which we presume will be argued here, that the writ of *venditioni exponas* only issued when the property levied on was not sold for want of bidders, or when there was not time between the levy and return day of the writ to advertise and sell.

That the writ had its origin in these necessities is not denied, but an examination of the decisions of the courts will show that in practice its use has been enlarged beyond these narrow limits. (See Tom. Law Dic., Tit. *Venditioni Exponas.*)

The question of the abandonment of a levy is not a matter of statutory regulation with us, and is therefore a matter of intention; and the courts, in determining the question of intention, will look at the situation of the parties, the land, the country, and in short all the circumstances surrounding the transaction. Holding up a sale an unreasonable length of time, sometimes raises the presumption of abandonment. And so, where the plaintiff holds up his sale in the interest of the defendant, and intervening rights accrue in favor of third parties, he will, as to such third parties, lose his lien. (Carter v. Sheriff of Halifax, 1 Hawks, 483.) But we have searched in vain for a case where the mere fact of holding up the sale for a short time was *ipso facto* an abandonment of the lien. We venture the assertion that no such case can be found, except where so provided by statute. Holding up the

sale could at most only raise a presumption of abandonment; but this, like all legal presumptions, could be rebutted by proof to the contrary. We think, however, in this State, and especially in those uncertain times when we were in the transition state from chaos to organized government, a few months delay in the sale of land would not raise the slightest presumption of abandonment.

Without attempting to review all the cases, we venture the assertion here, that in every case where it was held that the lien was abandoned, it was so held on one of these grounds: First, great lapse of time; second, when intervening equities have grown up; or third, where the sale is held up in the interest of the defendant and is thereby a fraud on other creditors. We think the time (from January till May) entirely too short to raise any presumption of abandonment; but had it done so, the plaintiff offered to rebut that presumption by the testimony of the attorney who ordered the sale held up, but his testimony was rejected. Nor is there in this case any pretense of combination between the plaintiff and defendant in execution to hold up the sale in favor of the defendant, and hold on to the levy to keep other creditors off. Nor is there any intervening right inconsistent with the preservation of the plaintiff's levy lien. Had McRae purchased the land several months after the levy and before the sale, there might be some slight degree of plausibility in his claiming the right to buy on the presumption that the plaintiff had abandoned her levy. But there is no pretense of any such right in this case.

But it may be argued here, as it was below, that the levy of the execution did not create any lien, in the first place, and therefore the *venditioni exponas* was void. Upon this point the court below held with us, but we will notice it in anticipation of its being raised here by appellee's counsel.

1. This court, in the case of Lockridge v. Baldwin, 20 Texas, 306, recognizes the writ of *venditioni exponas*. That writ presupposes that the property which it orders the sheriff to sell is in *custodia legis*. The writ of *fieri facias* formerly only commanded the seizure of personal property, but was finally extended so as to embrace land, and the writ of *venditioni exponas* is co-extensive in that respect with the *fieri facias*. And in the case above recited, the right of the sheriff to sell land under it was clearly and distinctly recognized. Nor is it any answer to this that the land in that case was situated in the county in which the judgment was rendered, for this writ has nothing whatever to do with a judgment lien, and is in no way dependent upon it. The judgment is simply a lien on the land; the land is not in the custody of the law until seized under execution. When in the custody of the sheriff, whether there be a judgment lien or not, the *venditioni exponas* orders the sheriff to sell that particular tract of land; the writ rests upon a seizure or levy lien, not upon a judgment lien.

2. In the case of Overton v. Perkins, 10 Yerg., 328, Thomas, in 1809, obtained judgment in Davidson county against Walker. In 1810 execution issued and was levied on a tract of land in Williamsom county, belonging to Walker, but the land was not sold. After the levy and return of execution Walker died. Without any process to Walker's representatives or heirs, several years after his death a *venditioni exponas* issued to the sheriff to sell the land levied on. The court, not without difficulty in coming to a conclusion, held the *venditioni exponas* void, but the reasoning of Mr. Justice Green, who delivered the opinion of the court, shows clearly that the court based their conclusion on the ground that the representatives of Walker had not been brought in by *scire facias* before the issuance of the *venditioni ex-*

*ponas*, and not on the ground that the levy had been abandoned by the plaintiff. The inference to be drawn from the opinion of the court is, that had the legal representatives been brought in, then a valid *venditioni exponas* could have issued, notwithstanding several years had elapsed. The court directly held, that the sale under the *venditioni exponas* related to the levy. The same doctrine was held in the later case of Taylor v. Mumford, 3 Hump., 66. It will be observed by the court that in both of these cases there was no judgment lien.

A still stronger case is Smith v. Spencer, 3 Ind., 256.

We refer the court also to the following cases decided in Arkansas: Cummins v. Webb, 4 Ark., 229; Pen v. Isherwood, 5 Gill, 206; State v. Hammett, 7 Ark., 492; Whiting v. Bube, 12 Ark., 422; Fenno v. Coulter, 14 Ark., 38; Lawson v. Jordan, 19 Ark., 298; 5 Gill, 206; 3 Md., 463; 1 Md. Chan. Decisions, 466.

3. A levy of attachment is regarded as creating a lien on the land levied upon, and upon the principle that it is in *custodia legis*. No reason can be given why one writ should create a lien and the other not. The command of the attachment is to seize and hold. The command of the *fieri facias* is, seize and sell. In the one case he holds till disposed of by order of the court; in the other he holds till disposed of by sale. The *venditioni exponas* is auxiliary to the latter, and commands the officer to sell when there has been a seizure and from any cause no sale. Under our law lands may be taken either under attachment or on execution. The mode of levy on land is not prescribed by statute. Generally a levy is made on real estate by giving public notice of the sale of it. (Burr. Law Dic., Tit. Levy; 1 Burr. Prac., 300; 5 Hill N. Y., 228.) Our statute requires this notice to be posted at the court house door. This notice shows that the land is in *custodia legis*.

4.   The lien is a necessary and inseparable incident of seizure in execution by the principles of the common law. (Stauffer v. The Commissioners, 1 Watts R., 300.)

5.   The argument that the statute prescribes the mode in which the plaintiff may create a lien on lands of defendant out of the county, and none can therefore be created otherwise, is fallacious. (See Stauffer v. Commissioners, *supra.*) The law did not allow an execution to run out of the county till the defendant's property in the county was exhausted; and where the plaintiff is satisfied the property in the county will not satisfy his debt, he can record his judgment in other counties and hold defendant's lands there till he can run his execution. And for another reason, he may by this mode acquire a lien which will hold the land indefinitely, if he wants merely to secure his debt, and not to sell.   Because the statute gives him this remedy to secure his debt, it does not follow therefrom that he may not send his execution at the proper time, and under it have the property placed in the custody of the law.   The object of the judgment record is to secure, the object of the other to collect, the debt, and the security is a necessary incident to the collection.

*Randolph & McKinney,* for appellees.—We maintain that the writ of *venditioni exponas* can never be issued except where a lien on the property sought to be sold has been created by the levy of a *fieri facias*, or where the judgment operates as a lien upon it.   The lien of judgments and executions has been made matter of statutory regulation in this State. (Mercein v. Burton, 17 Texas, 210.)   By virtue of our statute the judgment operates as a lien from the date of its rendition, on all the real estate of the defendant situated in the county where it is rendered, and on all land in any other county from

the date of the record therein of a certified copy of the judgment. The levy of an execution on personal property creates a lien, because the officer is bound to seize and take possession of it, and the law vests in him a special property in the thing seized. But the levy of an execution on land does not create a lien, for the reason that it gives the officer neither the right of property nor the right of possession. Besides, the subject having been made matter of statutory regulation, and the law-making power having provided that judgments, and the record of certified copies of them, should operate as liens on land, excludes the idea that it was the intention of the Legislature to make the levy of an execution act as a lien on real estate. It was, doubtless, one of the objects of the Legislature, in making the record of a certified copy of a judgment operate as a lien on real estate, to furnish to purchasers certain evidence as to whether the land they desired to obtain was encumbered. Would it not be a dangerous precedent to allow an innocent purchaser, after he had fully complied with the law, and had gone to the trouble and expense to find that there were no judgments in the several courts in the district, and no judgments or certified copies of them in the county where the land was situated, to be sold out under a *venditioni exponas* from the District Court of a distant county, six or eight months after the levy of a *fieri facias* of which he could have had no notice? Such a ruling would require parties to investigate the records of the District Court in each county in the State, before they would be safe in purchasing real estate.

Again, to make a valid levy on land not under judgment lien, the officer must take actual *pedal* possession and carry the writ upon the premises. (Leland v. Wilson, 34 Texas, 94; and cases there cited.) We insist that in order to make the return of a sheriff on a *fieri facias*

the basis of a writ of *venditioni exponas*, it should recite such facts as are necessary to support a valid levy. It should also be observed that every perfect levy and return of a *fieri facias*, even where there is a lien, will not justify the writ of *venditioni exponas*. At common law, if a sheriff levied a *fieri facias* on goods, and returned it indorsed that he could not sell for the want of buyers, the plaintiff might sue out a writ of *venditioni exponas*. (2 Tidd's Pr., 1020.) In no other case, and for no other purpose, was it ever allowed. It was never issued originally, or in the first instance, but it always arose out of and was dependent upon and auxiliary to the writ of *fieri facias*. The sheriff could not return the *fieri facias* and ask for a *venditioni exponas*, on the ground that he had made the levy too late to advertise and sell before the return day, because the levy and sale were an entire act, and it was his duty to make the sale, notwithstanding he had, under the requirements of the law, returned the writ. (2 Tidd's Pr., 1021; Hamilton v. Ward, 4 Texas, 356.) Nor could the writ of *venditioni exponas* be issued for the purpose of selling real estate, for the reason that under the English practice land could not be sold under a *fieri facias*. The form of the writ is confined to the one case of selling goods which had been levied on under a *fieri facias* and had not been sold for the want of buyers. (2 Saunders' Reports, 47; Humphrey's Precedents, Vol. 1, p. 390; Archbold's Forms, 163, 164, 174.)

We have not now, nor ever had in this State, any statute which either authorized or contravened the use of the writ of *venditioni exponas*. There was an old statute which impliedly recognized the writ, but it remained in force only a short time. In the cases of Lockridge v. Baldwin, 20 Texas, 303, and Young v. Smith, 23 Texas, 598, it was held, that although there was no spe-

cial statute on the subject, the writ of *venditioni exponas* was a species of execution known to the laws of this State; and that inasmuch as our statute authorized a sale of land under an execution, land under judgment lien, which had been levied on by *fieri facias*, might also be sold under a writ of *venditioni exponas;* and, further, that since an execution in this State is not, as it was at common law, an entire thing, and sale could not be made under it after the return day, the writ of *venditioni exponas* might be lawfully issued to sell property which had been levied on too late for the sheriff to sell before the return day of the *fieri facias*. But the court in those cases expressly says that the writ of *venditioni exponas* arises out of and is auxiliary to the writ of *fieri facias;* and that it had its origin in the exigences of the sheriff's duties and liabilities. Summing up the law on this one point, we have the cases in which the writ of *venditioni exponas* may lawfully issue, to-wit, where goods have been seized under a *fieri facias* and have not been sold for the want of buyers, and, in this State, where property, including lands under judgment lien, has been levied on too late to sell before the return day of the execution.

In the case before the court there was no judgment lien on the land, and, as we think, none was created by the pretended levy of the *fieri facias*. By reference to the statute it will be seen that the District Court of Brazoria county sat the first day of April, 1870, and that the appellant consequently had, after the pretended levy of the *fieri facias* on the land in question, on the thirteenth of December, 1869, an opportunity to sell either on the first Tuesday in January, or February, or March, 1870, which she did not do, but of her own volition postponed the sale until the first Tuesday in May, more than one month after the return day of the execution. The writ of *ven-*

*ditioni exponas* exhibited all these facts on its face, showing conclusively that its origin was not based on the "exigences of the sheriff's duties and liabilities," but rather on the omissions and negligence of the appellant. It may be replied, that a party plaintiff has a right to postpone a sale under his execution. Let it be conceded, and still it will not follow that he has a right to claim a benefit because of such a course. If he escape fine for thus trifling with the process of the court, and obtain an *alias fieri facias* for his debt, he ought to be satisfied. By ordering or consenting to the return of his execution without a sale, he may well be held to have lost the benefit of his levy. (Riddle v. Bush, 27 Texas, 675.) If he interfere with the execution, or, after a levy, direct the sheriff to hold up, the execution will be declared dormant. (Sayles' Practice, Sec. 653; Price v. Shipps, 16 Barb., 585; Hickok v. Coats, 2 Wend., 419.)

McADOO, J.—There is no doubt in our minds that under our law and the former decisions of this court, the writ of *venditioni exponas*, under which the land in controversy was sold, is a valid writ, and that the sale thereunder was as valid, and the sheriff's deed to the purchaser (the appellant) as complete a conveyance as they would have been had the sale been made under the original execution.

The original execution was levied on the land. The execution was returned with the levy endorsed, the property being then advertised for sale and a writ of *venditioni exponas* prayed for. The writ was issued, directing the very property to be sold by virtue of the levy.

In Lockridge v. Baldwin, 20 Texas, 306, the right of the sheriff to sell land under this writ was clearly recognized.

Judge Roberts, in delivering the opinion of the court,

says: "Execution is defined to be the act of carrying into effect the final judgment of a court. The writ which authorizes the officer so to carry into effect such judgment is also called an execution. (1 Bouv. Law Dic., 495.) *Venditioni exponas* is a writ of execution directed to the sheriff to sell goods and chattels, and in some States lands, which he has taken in execution by virtue of a *fieri facias* and which remain unsold."

In the case above quoted from, the sale was of land.

The court erred in sustaining the objections of the defendants in the court below to the admissibility in evidence of the writ of *venditioni exponas*. It should have gone to the jury as a part of the evidence of title.

The charge of the court was erroneous, in that it was based on an erroneous view of the legal effect of the *venditioni exponas* and the deed of the sheriff.

These evidences of title should have gone to the jury, and they should have been instructed to find for the plaintiff, unless the proof showed that she had notice of the conveyance of the land (prior to her purchase) by Tillman to McRae.

For the errors above noticed, the judgment of the court below is reversed and the cause remanded.

REVERSED AND REMANDED.