**LUDTKE et al. v. BANKERS' TRUST CO.**
**(No. 8241.)**

(Court of Civil Appeals of Texas. Galveston. Dec. 21, 1922. Rehearing Denied May 10, 1923.)

1. **Evidence** ⬥100, 587—**Time of levy of execution and issuance of venditioni exponas may be shown by circumstantial evidence.**

   That the only evidence available to show the time of the levy of an execution and issuance of a venditioni exponas is circumstantial does not make such evidence incompetent, nor destroy its probative force.

2. **Execution** ⬥320—**Sheriff making sale under execution presumed to have made levy before expiration of writ.**

   Where a sheriff's deed recites that he levied execution and sold the property levied on under and by authority of the execution, the presumption is that he made the levy before the writ expired, nothing to the contrary appearing.

3. **Execution** ⬥259—**Evidence held to justify finding that sheriff levied and sold property regularly before expiration of writ.**

   In trespass to try title, evidence *held* to justify a finding that the sheriff in making the levy and sale pursued the same method as the records disclosed was followed by him in making levy and sale under other executions issued at the same time, and that before the expiration of the writ of execution a venditioni exponas was obtained, notwithstanding that the execution docket failed to show such fact, and that all the files in the case were lost.

4. **Execution** ⬥105—**Sale under execution on void purchase-money bond is void.**

   If the sale of property for the purchase price of which a bond is given is void, the bond and any sale under an execution issued thereon are also void.

5. **Execution** ⬥125, 221—**Levy and sale after return day void.**

   Levy and sale under an execution after the return day is void.

6. **Execution** ⬥319 — **Reference in sheriff's deed to execution held to include venditioni exponas.**

   Where a sheriff's deed refers to the execution under which it was made, the reference will

---

be deemed to include a venditioni exponas, as well as the original writ of execution of which, when issued, it becomes a part; the two together being the process or authority under which the officer acted.

**7. Execution ⬤⟲320—Evidence held to show that recital of date in sheriff's deed was clerical error of recorder.**

Where a sheriff's deed recited that sale under execution was made on the 1st day of November, 1839, and the records showed that the 5th day of November was the legal sales day, evidence *held* to show that the recital in the deed was a clerical error of the recorder.

**8. Execution ⬤⟲217—Use of venditioni exponas impliedly authorized, notwithstanding common law not adopted.**

The use of a writ of venditioni exponas was impliedly authorized under the common-law practice, notwithstanding the common law was not adopted at the time a sale was made under execution with the aid of the auxiliary writ; the form of execution, as provided by statute, being identical in all material parts with the common-law fieri facias.

Error from District Court, Harris County; Chas. E. Ashe, Judge.

Trespass to try title by the Bankers' Trust Company against Rosina Ludtke and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Pritchett Harvey and Stevens & Stevens, all of Houston, for plaintiffs in error.

Louis, Campbell & Nicholson, W. A. Coombs, and Harry Holmes, all of Houston, for defendant in error.

PLEASANTS, C. J. This suit is an action of trespass to try title, and when tried in the court below the defendant in error, who will be hereinafter called appellee, was plaintiff, and the plaintiff in error W. T. Ludtke, hereinafter called appellant, was the sole defendant.

The land in controversy is a part of lot No. 8 in the subdivision made by D. Gregg of the Harris and Wilson two-league grant in Harris county. The petition is in the usual form of an action of trespass to try title. The defendant answered by general and special exceptions, general denial, and plea of not guilty, and by special pleas of limitation of 3, 5, and 10 years, and also by cross-action set up title to the land, and asked for judgment for title and possession thereof. The trial in the court below without a jury resulted in a judgment in favor of appellee.

It is unnecessary for the purposes of this opinion to state in detail the chains of title under which the parties claim. It is sufficient to say that appellee has title to the land from the sovereignty of the soil, unless a sheriff's sale and deed made in 1841 passed the title of Robert Wilson, who is the common source of the title of both appellant and appellee, to the purchaser at such sale. The facts bearing upon this issue are as follows:

On June 10, 1839, Andrew Briscoe obtained a judgment in the district court of Harris county against Joseph Evans for $600 debt, with 5 per cent. interest from December 28, 1838, and costs. On this judgment an execution was issued on June 29, 1839, and levied by the sheriff of Harris county on part of lot 10, block 20, city of Houston, which was sold on the 5th day of November, 1839, to Robert Wilson, for $400, on 12 months' credit. He gave bond, as the law then required, for the amount bid, with David Harris and Henry R. Allen as sureties, and, when said bond matured, it was not paid, and an execution was issued thereon from the district's clerk's office of Harris county on November 7, 1840, which was levied on the property involved in this suit (with other land), and sale thereof was made by said sheriff on the first Tuesday in January, 1841, to D. W. Clinton Harris, and a deed therefor executed to him by the sheriff. This deed, which is in proper form, and conveys all of Robert Wilson's interest in the land in controversy, contains the following recitals:

"That whereas, at the spring term of the district court, held at the city of Houston, on the fifth Monday after the fourth Monday of March, 1839, in and for the county of Harris, one Andrew Briscoe obtained a judgment against Joseph Evans in a certain suit then and there pending, for the sum of $600.00, at 5 per cent. per annum from the 28th day of December, 1838, until paid, as well as all costs of court, upon which judgment an execution was issued from the clerk's office of the district court on the 29th day of June, 1839, and was by the sheriff levied upon 16 feet of ground on Franklin street, and running back 50 feet, with a house thereon erected, of lot No. 10, in block No. 20, in the city of Houston; and

"Whereas, by virtue of the execution aforesaid, said property was by the return of the sheriff sold to Robert Wilson on the first day of November, 1839, at public outcry, etc. * * *"

The deed then goes on to recite that the sale was made on 12 months' credit; that Wilson gave bond, and the bond was forfeited; that execution issued thereon, which was levied upon the Wilson half interest in the Harris & Wilson survey, and the land sold to D. W. C. Harris.

The papers in the case of Briscoe v. Evans could not be found, and the only record of the levy and sale of the lot under the execution issued in said cause is that found on the execution docket of the clerk of the district court of Harris county, and in the recitals of the deed before set out.

The following entries appear upon the execution docket:

"55. Andrew Briscoe v. Joseph Evans, Judgment, 10 June, 1839. Debt $600.00. Clerk,

Holman, $13.38. County tax, $3.00. Sheriff, Moore, $2.50. Attorney's tax, $10.00. Issued June 29, 1839. Directed to Sheriff Moore. Delivered to Sheriff Moore. Return: Levied and sold on 12 mos. credit, due 13th December, 1840. (Clks. Additional costs, $2.50.)"

"320. Andrew Briscoe v. Robert Wilson, David Harris, Henry R. Allen, fi. fa. Judgment, 10 June, 1839. Debt $600.00. Clerk, Holman, $18.13. Sheriff, Moore; $21.75. Attorney's tax, $10.00. County tax, $3.00. Issued November 7, 1840. Directed to Shff. H. Co. Delivered to Shff. H. Co. Return: Not returned. Retd. May 9, 1841, principal in part satisfied as per receipts on execution, and costs paid. Recpd. on bond June 28, 1842."

The appellant introduced in evidence the original papers in a number of cases in which judgments were rendered at the June term, 1839, of the district court of Harris county. The execution docket for said court shows that executions were issued in each of these cases on June 29, 1839, directed to the same sheriff who received the execution and made the levy and sale in the case of Briscoe v. Evans. In all of these cases a writ of venditioni exponas is found among the papers, and the execution and return thereon show that the execution was levied before it expired, and that venditioni exponas was issued in aid of the execution, and sales were thereafter regularly made under such executions and assistant writ.

The execution docket does not show that a writ of venditioni exponas was issued in but one of these cases, and the sheriff's deeds made to the purchasers at the execution sales do not recite the issuance of such writs. The sheriff's deed to Robert Wilson conveying the lot sold under the execution issued on the Briscoe judgment recites that the sale was made on the 5th day of November, 1839, and it is shown that the first Tuesday in November, 1839, was the 5th day of that month.

At the request of appellants the trial court filed conclusions of fact and law. These findings of fact, in so far as they relate to the issue of the validity of the execution sale under which appellants claim, are as follows:

"(3) The plaintiff has the record title to said tract of land.

"(4) In the trial of the case the defendant W. F. Ludtke claimed the record title to the land sued for through deed purporting to be from Robert Wilson, by sheriff, to D. W. C. Harris. dated January 4, 1841, copy of which, in so far as affects the land in controversy, is attached thereto marked Exhibit B. At the time of such conveyance Robert Wilson owned an undivided one-half interest in lots 7, 8, 9, and 10 of the second tier. The judgment in favor of Andrew Briscoe against Joseph Evans, referred to in said deed, was rendered as recited in said deed, and execution was issued thereunder upon the date recited in said deed. All of the papers in said cause, including the writ of execution, have been lost, but there is an entry in the execution docket in the district clerk's office, as follows: [Here follows the entries upon the execution docket before set out]. No evidence was offered as to the issue and levy of said writ of execution, or the sale thereunder, or the delivery to the sheriff of any bond to secure the purchase money bid at said sale, or subsequent execution issued on said bond and the levy thereof and sale thereunder, other than the entries on said execution docket and the recitals in the sheriff's deed above mentioned.

"(5) Evidence was offered showing that in other cases executions were issued preceding and subsequent to June 29, 1839, and upon June 29, 1839, they were levied upon specific property, and advertisement made of such levies and intended sale, and that such executions were returned by the sheriff before 90 days from the issuance thereof, with the request for the issuance of writs of venditioni exponas for the purpose of completing such sales, and that such writs of venditioni exponas were issued and such sales completed thereunder, and that deeds were executed and delivered by the sheriff in accordance with such sales which recited only the issuance of the original execution, and did not recite that such writs of venditioni exponas had been issued or such sales completed thereunder. There being no evidence in the record showing when the original writ of execution in the case of Briscoe v. Evans was levied, or that return thereof was made within 90 days of its issuance with the request for a venditioni exponas, or that such venditioni exponas was issued and the sale completed thereunder, I can make no finding as to such facts."

The finding that the plaintiff has the record title to the land is a conclusion of law, and not a specific finding of any fact upon which the invalidity of the sheriff's sale of the land to Harris can be predicated. But, construing the findings as a whole, we think the court intended to find that the evidence was insufficient to show that the execution under which the lot in the city of Houston was sold to Robert Wilson was levied upon said lot before the expiration of 90 days after it was issued, and was also insufficient to show that a writ of venditioni exponas was issued directing the sale of the property theretofore levied on under the execution, and that such sale was made under the execution and assistant writ on the first Tuesday in November, 1839. Giving the findings this construction, we find ourselves unable to agree with the learned trial judge that the evidence is insufficient in the respect stated. In determining this question it must be borne in mind that these transactions occurred more than 80 years ago, that all the persons participating therein are now dead, and that all the original papers in the case have been lost. In these circumstances, all the direct evidence of the facts sought to be shown being lost, resort must be had to secondary evidence.

[1, 2] The fact that the only evidence now available to show the time of the levy of the execution and the issuance of the writ of venditioni exponas is circumstantial does not make such evidence incompetent nor destroy

its probative force. It was the sworn duty of the sheriff to whom the execution was directed and delivered to make a levy upon property of the defendant within 90 days from the date of the issuance of the execution, and, when he recites in his deed that he levied the execution and sold the property levied upon under and by authority of the execution, the presumption should be that he made the levy before the writ expired, if there is nothing to the contrary shown by the record.

It is very earnestly insisted by counsel for appellees that the recitals in the sheriff's deed and the entries upon the execution docket before set out, show that the levy and sale were made under an execution that had become functus officio by the expiration of the 90 days in which, under the statute, it was required to be executed. This contention is based solely upon the fact that the dates of issuance of the execution and of the sale, as shown by the record, cover a period of time longer than 90 days, and that there is no recital in the deed, and no entry on the execution docket, showing a levy of the execution before its expiration and the issuance of a second writ directing the officer to proceed with the sale. The absence of such recitals in the deed or such entry on the execution docket is at most only a negative circumstance tending to support appellee's contention. The sheriff was not required to make such recitals in his deed. The record which the law required him to make of his action in executing the writ was in his return upon the execution. This record, as found by the trial court, has been lost. The sheriff and all those who participated in the transaction are long since dead, and conceding for the sake of argument, that, upon the record as here presented, the presumption of the official action is not of itself sufficient to show the validity of the sale, the question then presented is: Are the circumstances shown by the evidence sufficient to sustain the conclusion that the execution was levied before its expiration and writ of venditioni exponas thereafter issued directing the officer to proceed with the sale?

[3] The uncontradicted record evidence shows that in a number of cases in which executions were issued upon judgments rendered during the spring term of 1839 of the court, in which the judgment in the case of Briscoe v. Evans was rendered were directed to and placed in the hands of this sheriff. At least five of those executions were issued on the 29th day of June, 1839, the same day on which the execution in this case was issued. The original writs of execution in these cases were in evidence, and the return of the sheriff thereon shows that in each case the execution was levied before the expiration of 90 days after its issuance, and, because the writs would expire before the sale, a writ of venditioni exponas was applied for and obtained by the sheriff and the sale proceeded with under the original and assistant writ. The issuance of the writ of venditioni exponas is not shown in these cases by the entries on the execution docket or by the recital in the sheriff's deeds to the purchaser at the sale. We thus have conclusive evidence that the sheriff understood and performed his full duty in the matter of the levy upon the sale of property under execution in all of a number of cases in which he was called upon to perform that duty at the every time he executed a similar duty in this case. We think this evidence is amply sufficient to justify the finding that the same method was pursued by the sheriff in the levy and the sale of the lots to Wilson that he followed in the other cases handled by him at the same time, and fully rebuts any inference of irregularity that might arise from the absence of any recital in his deed, or in the entry on the execution docket, of the date of the levy or the issuance of the writ of venditioni exponas.

The further fact that the legality of the sale of the lot to Wilson and the subsequent sale of the property in controversy was never questioned by the parties interested therein, and that the claim of title under the Harris deed and acts of ownership of the land conveyed thereby continued uninterruptedly for 50 years or more, many deeds having been executed under this title, tends strongly to show the validity of the deed. The validity of the deed is not shown to have been questioned by the owner of the land at the time of its sale, who lived in Harris county, and must have known of the acts and claim of ownership asserted by those holding under this deed. We think all these circumstances lead to the inevitable conclusion that the levy and sale were regularly made, and the trial court erred in holding that the sheriff's deed to Harris conveyed no title to the land.

[4] There is no question raised as to the regularity of the sale of the land in controversy under the execution issued on the forfeited bond, but, under the decision of our Supreme Court in the case of Towns v. Harris, 13 Tex. 507, if the sale of the lot for the purchase price of which the bond was given was void, the bond and any sale under an execution issued thereon were also void. While there is authority to the contrary, this decision has been followed and approved by our courts, and must be regarded as the law of this state.

[5] It also seems to be a settled rule of decision in this state that a levy and sale under an execution after the return day is void. Such being the rules of decision in this state, the trial court, having found, in effect, that the levy of the execution under which the lot in Houston was sold to Wilson was not made before the expiration of 90 days after the issuance of the execution, and that no writ of

venditioni exponas was issued, correctly applied the law to the facts found. But, as before stated, we think the fact findings of the court upon these issues are contrary to all the evidence, and for this reason the judgment cannot be sustained.

We adopt as part of this opinion this excerpt from the every exhaustive brief by counsel for appellants:

"The contention of counsel for the trust company, that because the sheriff's deed recites the sale was made under the execution issued June 28, 1839, and makes no mention of the writ of venditioni exponas, and, because the entry on the execution docket does not state that such writ was issued, therefore no such writ was issued, is not tenable, for the reason that the venditioni exponas is not a separate writ from the execution, but is auxiliary to and a part of the execution. 'The venditioni exponas is not a writ separate and apart from the fi. fa., but a part of it.' 23 C. J. 619, § 556. 'It is in the nature of a mandate, or order requiring the sheriff to proceed to the execution of the former writ, which is still regarded as the foundation of his proceeding.' Id. 'The execution and levy constitute the predicate of the venditioni exponas, and the latter, as the former, rests upon the judgment, and its only office is to sell that which has already been seized to satisfy the judgment and costs upon which the execution was issued, and the same is the case with any subsequent venditioni exponas that may issue. In other words, the only office of the writ is to command the officer to proceed, when he returns the execution showing that he has not made a sale of the property levied on, as required by the writ.' 23 C. J. 619, § 557.

"We quote from Young v. Smith, 23 Tex. 600, 76 Am. Dec. 81, as follows: 'So, in Tennessee, it is held, that the term 'execution,' comprehends the writ of venditioni exponas. Webb v. Armstrong, 5 Humph. 380; 6 Id. 298. In Kentucky, it is held, and on the common-law principles, that, where a sheriff has levied on property before the return day of the execution, he may proceed to sell afterwards, as well lands as personal property, even without a venditioni exponas, on the ground that this writ gives no new authority to the officer, but is merely intended to compel him to do that which he was before authorized to do. The doctrine in that state is, that such being the power of the sheriff, under a writ of fieri facias, at common law, and not having been repealed by their statute concerning executions, the power still exists. The statute having made lands subject to like process of execution as personal property, they hold that it may be dealt with in like manner. Irvin v. Pickett, 3 Bibb, 343; 5 Litt, 20.'

"Our Supreme Court, in Lockridge v. Baldwin, 20 Tex. 308, 70 Am. Dec. 385, holds: 'The writ of venditioni exponas arises out of, and is partly dependent upon, and auxiliary to, the writ of fieri facias. It but embodies the rights of the parties and the duties of the officer, after an execution has been returned with a levy on property indorsed on it. It had its origin, as is very probable, in the exigencies of the sheriff's duties and liabilities. For if the sheriff levied on property by virtue of a fieri facias, and the return day arrived before he had sold the same, he had the power, and it was his duty, to sell it after that day. Tidd's Practice, marg. p. 1021; Hamilton v. Ward, 4 Tex. 356. If the sheriff did not return the writ, at return day, he was liable to a rule or to a suit. Tidd's Practice, marg. pp. 1017, 1018, 1019; Hart. Dig. art. 1287. If it were doubtful whether he had levied on property sufficient to satisfy the judgment, it was hazardous for him to retain the execution. That difficulty was obviated by his returning the fieri facias with his levy indorsed on it, with an excuse for not selling, and then the plaintiff could take out an order of sale to sell the property thus levied on for his benefit, and this was the writ of venditioni exponas, which could be issued singly as in this case, or in conjunction with another writ of fieri facias. Tidd's Practice, marg. p. 1020.'

"The term 'execution' is broad enough to include all writs necessary to enforce the court's judgment. In 23 C. J. p. 306, it is said: 'Thus it sometimes embraces all the appropriate means to execution of the judgment; all means by which the judgments or decrees of courts are enforced; all processes issued to carry into effect the final judgment of a court; all processes and proceedings in aid of or supplemental to execution that are customary in civil cases.' The term "execution" means the process by which the sentence of the law is put in force; it is a general term, which applies to all writs, the object of which is to enforce the judgment of a court. 3 Black Com. 413.' 'The term "execution" applies to all process issued to carry into effect the final judgment of a court.' Pierson v. Hammond, 22 Tex. 587.

"The execution law of 1839 did not require the clerk to note on the execution docket all the intermediate steps taken between the issuance of the execution and its final return. In the case of Briscoe v. Evans the entry made on the execution docket complied with all the requirements of the law. The name of the case was given, the date issued, the amount, the date of delivery and to whom delivered is given, and the ultimate return is shown. 'Levied and sold on 12 mos. credit, due 13th Dec. 1840. (Clks. Addtnl. Costs $2.50.)' The issuance of the venditioni exponas was only an intermediate step between the execution and the final act of noting the sheriff's return; and the law did not require the issuance of the venditioni exponas be noted on the docket. It was, in fact, a part of the execution, and only issued to aid in completing what was begun under the execution."

[6] This being the nature and office of a writ of venditioni exponas, the reference to the execution in the sheriff's deed can be properly interpreted as including the venditioni exponas, as well as the original writ of which, when issued, it became a part, the two together being the process or authority under which the officer acted.

[7] We do not think appellee's contention that the record shows that the sale was not made on a legal sales day should be sustained. The certified copy of the deed used in evidence does recite that the sale was made on the 1st day of November, 1839, and

it is admitted that the first Tuesday in November of that year (the law then, as now, requiring all sales of land under execution to be made on the first Tuesday of the month) was the 5th day of the month. This recital is contradicted by the recital in the deed for the lot made by the sheriff to Wilson at the time the sale was made. This deed recites that the lot was sold on the 5th day of November. Other sales by the sheriff under executions issued at the time this execution was issued are shown by the record to have been made on the 5th day of November, the legal sales day. It is hardly conceivable that the officer, with full knowledge of the requirements of the statute, would make a sale of the land on a day not authorized by the law. Every presumption is against such a conclusion, and we think the evidence before stated fully warrants the conclusion that the recital in the deed that the sale was made on the 1st day of November is a clerical error of the recorder.

Appellant further contends:

"That, if it had been shown that a venditioni exponas had issued, and the sale made thereunder, the same would nevertheless be void, because the writ of venditioni exponas is a common-law writ, and the common law was not adopted in Texas until 1840—one year after the sale in question was made. The use of such writ at the time of the sale would, therefore, have been unauthorized, and a sale under it void."

[8] This contention cannot be sustained. From the nature and office of this writ, as before shown, no statute expressly authorizing its issuance, and prescribing its forms and requisites, was necessary to make its use legal. The form of an execution as then provided by the statute is in all material parts identical with the common-law fieri facias. In thus directing the use of the common-law writ, the auxiliary writ which under the common-law practice was a part of the execution was impliedly authorized. This implication is strengthened by the ordinance of January, 1836, opening the courts of Texas, which provides for the appointment of a clerk who shall "do all acts which clerks have to do in the superior courts of the United States of the North." The undisputed evidence shows that the writ was in common use in the district court of Harris county, and its natural and proper use fully understood at the time the execution in this case was issued, and, so far as we have been able to ascertain, the authority for the issuance of such writ has never been questioned by any decision of our Supreme Court.

The case of Lockridge v. Baldwin, 20 Tex. 303, 70 Am. Dec. 385, cited by appellee, does not hold, as contended by appellee, that a writ of venditioni exponas was unauthorized prior to the adoption by Congress of the common law on January 20, 1840. All that the case holds is that the general use of this writ came into practice after the adoption of the common law, and, without any special statute authorizing its use, was a lawful writ of execution. There is nothing in the opinion to sustain the proposition that the use of such writ would have been unlawful before the adoption of the common law.

We cannot agree with appellee that it holds title to the land under D. W. C. Harris, and therefore the judgment in its favor should be affirmed if the sheriff's sale and deed to Harris passed the title to him. The record shows that the title acquired by Harris through the sheriff's sale and the deed was conveyed by him to T. T. Hailey on June 15, 1854. T. T. Hailey conveyed to his son Thomas J. Hailey, on September 14, 1875, a tract of 230 acres of land, a part of the Wilson and Harris grant in Harris county. While this deed is not so indefinite in its description of the land conveyed as to render it void (Ludtke v. Murray [Tex. Civ. App.] 199 S. W. 322), we find no evidence in the record showing that the land described in the deed included the whole or any part of the land in controversy in this suit. The findings of the trial court, which were not excepted to by the appellee, are in effect findings that this deed does not convey the land in controversy. These findings are as follows:

"If any title to lot 8 passed under the sheriff's deed above referred to, then such title passed by regular transfers into T. T. Hailey, by deed dated June 15, 1854. T. T. Hailey was married twice. By his first wife he had two children, Thomas J. Hailey and Mrs. Lauderdale, and by his second wife two sons, Charley and W. J. T. T. Hailey and both of his wives are dead. Defendant W. F. Ludtke claims title to the land in controversy under special warranty deed which was executed by W. J. Hailey to him, conveying the whole of said lot 8, dated December 5, 1912, reciting a consideration of $1 and other good and valuable considerations. If title to said land passed into T. T. Hailey through the sheriff's deed above referred to, then the plaintiff holds the title to (of) Thomas J. Hailey to the land in controversy, by mesne conveyance."

One of the court's conclusions of law is as follows:

"If the last preceding conclusion be erroneous, and if the interest of Robert Wilson in said land passed under said deed, then I conclude that the same passed by mesne conveyance into T. T. Hailey by the deed referred to in the findings of fact, and that the plaintiff acquired the interest in said land inherited from said T. T. Hailey by his son, Thomas J. Hailey, and that the defendant W. F. Ludtke acquired, by the deed referred to in the findings of fact, the interest therein inherited from T. T. Hailey by W. J. Hailey, a son of said T. T. Hailey."

It is manifest that, if the court had found that the deed from T. T. Hailey to Thomas

J. Hailey passed the title to the land in controversy he would not have concluded that appellee, under mesne conveyances from T. J. Hailey, had only acquired title to the interest .in the land inherited by T. J. Hailey from his father T. T. Hailey, and that appellant had the interest in the land inherited by W. J. Hailey, another son of T. T. Hailey. The undisputed evidence shows that T. J. and W. J. were not the only heirs of T. T. Hailey. .

In this state of the record it is clear that the judgment cannot be affirmed in whole or in part.

For the error before pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

In our original opinion, in discussing the question of whether the deed from T. T. Hailey to T. J. Hailey conveyed the land in controversy in this suit, we say:

"We find no evidence in the record showing that the land described in the deed included the whole or any part of the land in controversy in this suit."

In the motion for rehearing appellee has called our attention to a number of circumstances shown by the evidence which, taken together, are sufficient to justify a finding that the land in controversy was conveyed by the deed mentioned, and we must retract our former statement. We adhere, however, to the conclusion expressed in our original opinion that the findings of the trial court must be interpreted as including a fact finding that the land in controversy was not conveyed by the deed mentioned, and such finding is binding upon us on this appeal.

We think the motion for rehearing should be overruled; and it is so ordered.